**Application of Theodore S. SULKOWSKI.**

**Patent Appeal No. 9038.**

United States Court of Customs
and Patent Appeals.

Dec. 6, 1973.

Ellsworth H. Mosher, Arlington, Va., attorney of record, for appellant, Robert Wiser, Philadelphia, Pa., (Wyeth Laboratories), John W. Routh, Vito Victor Bellino, New York City (American Home Products Corporation), of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Raymond E. Martin, Washington, D. C., Gerald H. Bjorge, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal from the decision of the Board of Appeals sustaining the rejection of claims 22, 23, 24 and 25 of appellant's application [1] under 35 U.S.C. § 102(e) of Houlihan patent No. 3,334,113, issued August 1, 1967, on an application filed December 18, 1963. The appealed claims were copied from Houlihan for purposes of interference [2] Appellant's application having been filed later than Houlihan, the question is whether the appealed claims of that application are entitled to the benefit of the filing date of application serial No. 272,216, filed April 11, 1963, of which it is a continuation-in-part.

Claims 22 and 24 are illustrative:

22. 9b - phenyl - 1,2,3,9b - tetrahydro - 5H - imidazo [2,1–a] isoindol - 5 - one.

24. A process for preparing a 9b-phenyl - 1,2,3,9b - tetrahydro - 5H - imidazo [2,1–a]. isoindol-5-one which comprises contacting an o-benzoylbenzoic acid, in an inert solvent, with a diamine of the formula $H_2N(CHR)_2 NH_2$, wherein each R is, independently, hydrogen or lower alkyl, and refluxing the same in said inert solvent.

Claim 23 is directed to a p-chloro derivative of the claim 22 product and claim 25 defines the process of claim 24 wherein the diamine is ethylenediamine. No additional issues arise as to claims 23 and 25 and they need not be separately considered.

The compound of claim 22, 9B-phenyl-1,2,3,9B-tetrahydro-5-H-imidazo [2, 1-a] isoindol-5-one, so identified in both

Houlihan and appellant's present application, may be graphically represented as follows:

The parent application appellant relied upon discloses 3,4-dihydro-6-phenyl-2,5-benzodiazocin-1(2H)-one, graphically represented as:

Each of appellant's applications disclose a process for producing its product and identifies the product by melting point of 155-7°C and empirical formula $C_{16}H_{14}N_2O$.

The examiner held that the disclosure in the parent application was not such as to entitle appellant to its filing date "even though the subject matter of the invention may have been inherently produced." She stated that obviousness of the error in the structure has been the criteria in determining inherency issues. In support, she cited Riester v. Kendall, 159 F.2d 732, 34 CCPA 859 (1947), which states that a disclosure "will not be held to be insufficient for constructive reduction to practice by reason of a mistake in [the] specification which is obvious to a person skilled in the art." She considered the same criteria to be followed in In re Nathan, 328 F.2d 1005, 51 CCPA 1059 (1964), which cites Riester with approval and in Spero v. Ringold, 377 F.2d 652, 54 CCPA 1407

---

1. Serial No. 554,672, filed June 2, 1966.

2. Claims 24 and 25 omit limitations in the corresponding Houlihan claims that appellant apparently regards as immaterial.

(1967). The latter stated that the adequacy of the disclosure in a parent application is determined by what has been taught by the parent specification to "those skilled in the art to which it pertains," citing 35 U.S.C. § 112.[3]

The examiner, in effect, accepted as a fact, at least for purposes of the rejection, that the parent application discloses how to make the claimed compound, but she considered the inaccurate description of the structure in the parent to differ so significantly from the correct structure as "to indicate a failure to appreciate the real essence of the invention." She found nothing in the parent application to lead one skilled in the art to the correct structure. Rather she considered that the erroneous structure "appears to be accurate on its face" and that it would not be readily apparent or obvious to one skilled in the art what the correct structure was. On this basis she rejected both the product and process claims.

The board observed that appellant urged the presently described structural formula as the correct formula for the products and claimed such products were inherently produced by following the specific examples in the parent application. It stated:

If there were positive proof supporting this position we might agree with appellant.

However, the board found it uncertain from the record that "the products specifically described in the parent application are necessarily products having the structure herein and not the structure specifically described in said parent application." It further found that appellant has alleged that he discovered an error in the structure as described in the parent application, but has not presented any proof to support the contention. It continued:

His comparison of Examples 1 and 3 herein with Examples 1 and 3 in the prior application overlooks the fact that different reaction conditions were employed.

It then specified what it considered to be different reaction conditions and rejected appellant's contention that the products herein claimed were inherently produced in the examples of the parent application.

Turning specifically to the process claims, the board stated:

As to the * * * two process claims, we disagree with the examiner insofar as the holding is with the operative teaching in the process. The process steps are supported in the parent application.

However, it concluded:

While the operative portion of process claims 24 and 25 is set forth in the parent application, the claims require the production of a particular product. Since the structure of this product is not set forth in the parent application, one skilled in the art could not employ the process parameters to produce such product, would not know when the product was present, and would not know how to recover it. The parent application, therefore, is deficient with respect to a process for preparing the product specifically required in claims 24 and 25.

Appellant requested reconsideration by the board as to product claims 22 and 23, stating:

At no time during the proceedings before the Examiner was any question raised respecting a difference in the procedures of Examples 1 and 3 of the instant application on the one hand, and of Examples 1 and 3 of Serial No. 272,216 on the other hand, which might lead to different products. No

---

3. We note that the basic question here may be more precisely stated as whether the parent application contains "a written description of the invention" as required by the

first paragraph of section 112. See In re Ahlbrecht, 435 F.2d 908, 58 CCPA 848 (1971).

criticality was asserted in either application for the process conditions of time and temperature, i. e., refluxing for 2 to 16 hours. Hence we regard the decision as one under Rule 196(b) and accordingly submit herewith as a timely submission the affidavits of appellant and of Mr. Bruce R. Hofmann. Appellant's affidavit with exhibits sets forth the procedures of Examples 1 and 3 of Serial No. 272,216 together with the results of experiments following the procedures of Examples 1 and 3 of the instant application, including melting point, microchemical, ultraviolet, nuclear magnetic resonance and infrared analyses. The affidavit of appellant, as does that of Mr. Hofmann, concludes that the products of the respective examples are identical, and hence that the products of the instant application were inherently produced by following the examples in the parent application, and notes that the structure is that set forth in the instant application.

The board denied that any new rejection was made and declined to consider the evidence offered.

As to claim 22, the rationale of the examiner's rejection was that a person skilled in the art would not find it obvious from the parent application that the product therein was incorrectly named 3,4-dihydro-6-phenyl-2,5-benzodiazocin-1(2H)-one and that it properly could be named 9-b-phenyl-1,2,3,9b-tetrahydro-5H-imidazo[2,1-a] isoindol-5-one. The board on the other hand ignored any test of obviousness of the error in naming. It stated that if there were positive proof supporting the appellant's position that the claimed structural formula is the correct formula for the products and that such products were inherently produced by following the specific examples in the parent application, it "might agree with appellant." However, the board's affirmance as to product claims was solely on the basis that the process differences pointed out by it for the first time negated such inherency. It thus affirmed their rejection on grounds incompatible with the premise relied on by the examiner and implied that it might not agree with the examiner's basic position that the error in naming an inherently formed product must be obvious to a person of ordinary skill in the art.

The showing appellant submitted with the request for reconsideration thus is directed specifically to a new ground of rejection. The refusal to consider that showing constitutes clear error and requires remand as to claims 22 and 23. See In re Eynde, 480 F.2d 1364 (CCPA 1973). In re Waymouth, 486 F.2d 1058 (CCPA 1973).

As to claims 24 and 25, the board's statement that the process steps therein *are* supported in the parent application is not readily reconciled with its holding that the process of that application does not inherently produce the claimed products. This obviously introduces difficulty in understanding the board's position on these claims. Furthermore, an attempt to review its position would require determination of whether the process of the parent application inherently produces the claimed products—a determination that would amount to our prejudging the very showing which the board must evaluate as to the product claims. We therefore are constrained to remand the case as to the process claims also. *Cf.* In re Herrick, 344 F.2d 713, 52 CCPA 1664 (1965).

Accordingly, the case is remanded to the board for consideration of the affidavit showing submitted by appellant and for such other proceedings not inconsistent with this opinion as may be necessary to dispose of the case or place it in appropriate condition for judicial review.

Remanded.