**Mohammad A. ROUF, Plaintiff,**

v.

**COMMISSIONER OF PATENTS AND TRADEMARKS, Defendant.**

**Civ. A. No. 92–2753.**

United States District Court,
District of Columbia.

Nov. 8, 1993.

Mohammad A. Rouf, pro se.

Murriel Elizabeth Crawford, U.S. Patent & Trademark Office, Office of the Sol., Arlington, VA, for defendant.

### *MEMORANDUM OPINION AND ORDER*

SPORKIN, District Judge.

This matter is before the court on defendant Commissioner of Patents and Trade-

marks' Motion for Summary Judgment. Plaintiff, Mohammad Rouf, proceeding *pro se*, brings this action under 35 U.S.C. § 145 seeking to set aside a decision by the Board of Patent Appeals and Interferences ("the Board") to reject his application for a patent. The Board based its decision on its finding that the plaintiff's invention was anticipated by the prior art and was obvious. This court took the matter under advisement and is now prepared to rule.

## BACKGROUND

In 1990, plaintiff applied to the United States Patent and Trademark Office ("PTO") for a patent for his "invention" of a device which facilitates heat exchange between two fluids. The plaintiff's device consists of a tube made out of a heat conducting material with a helical spring-shaped structure attached to its inner walls. A foil structure, twisted into a helix, runs through the center of the tube. In one alternative design, an additional spring-shaped helical structure is attached to the outer walls of the tube. When one fluid is passed through the inside of the tube and another is passed outside the tube, the device creates turbulence in the two fluids thereby augmenting heat exchange between the fluids.

A properly drafted patent application includes a specification which consists of a narrative section describing the invention and at least one claim. The object of the specification is to put the public on notice of the features of the invention that require a license and those that may be used without penalty. The claims legally define the inven-

tion. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961). Therefore, they must point out and distinctly claim the subject matter covered by the invention. Limitations found in the narrative section of the specification cannot be read into the claims in order to determine patentability. *In re Prater*, 415 F.2d 1393, 1404–05 (C.C.P.A.1969). Because the claims define the boundary of the patent and because the invention's patentability is based on the claims contained in the application, the drafting of an effective claim requires some degree of knowledge and expertise.

Plaintiff prepared his patent application himself and he filed it with the PTO on January 18, 1990. It contained a total of seven claims. The PTO patent examiner rejected his application on June 1, 1990, noting that claims 1 through 6 failed to define the invention in the manner required by 35 U.S.C. § 112.[1] In addition, the PTO stated that the indefiniteness of the claims prevented a meaningful comparison with the prior art. It gave the plaintiff an opportunity to revise his claims and resubmit the application. Plaintiff amended his claims and filed them with the PTO on September 4, 1990. On November 5, 1990, the PTO issued a Final Rejection in which it rejected claims 1 through 7 of the amended application. It furnished the same reasons given in its original rejection but added that some claims were rejected under 35 U.S.C. § 102(b) as being anticipated by the prior art[2] and others were rejected as obvious under 35 U.S.C. § 103.[3]

---

1. Section 112 sets forth the PTO's standards for a patent specification and claims. 35 U.S.C. § 112. The PTO observed in its June 1, 1990 rejection that plaintiff's claims did not comply with the requirements of section 112 for the following reasons: they were narrative in form, contained indefinite and functional or operative language, did not clearly and positively specify the structure, they were not in one sentence format, and the structure was not "organized and correlated in such a manner as to present a complete operative device."

2. Section 102 provides in pertinent part:
   A person shall be entitled to a patent unless ... (b) the invention was patented or described in a printed publication in this or a foreign coun-

try or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States. 35 U.S.C. § 102(b). A claim is anticipated if each limitation of that claim is found in a single reference in the prior art. *In re Donohue*, 766 F.2d 531, 534 (Fed.Cir.1985).

3. The PTO based its obviousness rejection on 35 U.S.C. § 103 which provides:
   A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention

In response to plaintiff's request for reconsideration of the finality of the November 5, 1990 rejection, the PTO withdrew the rejection and reconsidered plaintiff's second amendment of his claims. In a February 4, 1991 Final Rejection the PTO rejected all seven of plaintiff's claims as anticipated and obvious. The PTO also noted in the February 4, 1991 rejection that

> [a]n examination of this application reveals that applicant is unfamiliar with patent prosecuting procedure. While an inventor may prosecute the application, lack of skill in this field usually acts as a liability in affording the maximum protection for the invention disclosed. Applicant is advised to secure the services of a registered patent attorney or agent to prosecute the application, since the value of a patent is largely dependent upon skillful preparation and prosecution.

The PTO also advised plaintiff that it could not aid him in selecting an attorney or an agent, however, it directed him to a publication listing attorneys and agents registered to practice before the PTO.

By letter dated May 3, 1991, plaintiff requested and obtained yet another reconsideration of the agency's final action. On June 3, 1991, the PTO again rejected all seven of plaintiff's claims for substantially the same reasons given in the previous rejection. Plaintiff notified the PTO that he was withdrawing claims 4, 5, 6 and 7. Plaintiff appealed the June 3, 1991 Final Rejection to the Board requesting an independent evaluation of his claims 1, 2 and 3. He opted to represent himself before the Board and filed his brief on November 1, 1991.

In September 1992, the Board upheld the decision of the PTO examiner to reject plaintiff's patent application. The Board sustained the examiner's finding that plaintiff's device was unpatentable under 35 U.S.C. § 102(b) based on its factual determination that claims number 1 and 3 in the plaintiff's

application were anticipated by a prior art reference. The Board also based its decision on its legal conclusion, under 35 U.S.C. § 103, that claim number 2 in plaintiff's application was obvious.

## DISCUSSION

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Accordingly, the issue before the Court is limited to whether a material fact in this case is in dispute. *See e.g., Federal Labs, Inc. v. Barringer Research, Ltd.,* 696 F.2d 271, 274 (3d Cir.1982). A material fact is one which tends to resolve an issue in the case. *See Hahn v. Sargent,* 523 F.2d 461 (1st Cir.1975), *cert. den.* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). A material fact is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The Board stated in its opinion that plaintiff's claims 1 and 3 were anticipated by a reference in the prior art to Zelnik[4]. The Board also upheld the decision of the examiner to reject claim 2 as obvious under 35 U.S.C. § 103 on the basis of its examination of Zelnik and another prior art reference, Owen.[5] It found that the claim was not patentable because a person skilled in the art of heat transfer devices, having read Zelnik and Owen, could have constructed a device such as plaintiff's.

Plaintiff contends that the PTO failed to comprehend the very nature of Zelnik, therefore, all of its findings stemming from references to Zelnik are faulty. Specifically, plaintiff asserts that the PTO neither understands the underlying scientific principles nor the subject matter of Zelnik's invention. In his Reply and Cross Motion for Summary Judgment,[6] plaintiff lists the reasons forming

was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4. U.S. Patent 4,009,751 to Zelnik, March 1, 1977.

5. Great Britain Patent 330,590 to Owen, June 1930.

6. The actual title of plaintiff's pleading is Plaintiff's Counter Affidavit Against the Motion for Summary Judgment. To the extent it requests

**12**

the basis of his claim that his heat transfer device is patentable. The defendant contends, however, that the PTO examiners were correct in their assessment of Zelnik and their conclusions as to the patentability of plaintiff's invention. Alternatively, defendant asserts that although there may be important differences between the plaintiff's invention and Zelnik, those differences are not included in the plaintiff's claims, therefore they cannot form the basis for patentability.

It is apparent that the plaintiff is plagued by many of the pitfalls commonly encountered by *pro se* litigants. The plaintiff is not familiar with the basics of patent law, and he has demonstrated that he is unable to translate his arguments into legal terms, and to draft a patent application that conforms with the law. Despite plaintiff's ardent conviction that he was somehow wronged by the Board's decision, it became clear to this court during the summary judgment hearing that plaintiff was severely handicapped by his decision to represent himself in this matter. Plaintiff did not appear to understand the legal arguments set forth by the defendant thus he was unable to adequately respond to them. As a result, both parties spoke at cross purposes. The Court notes that plaintiff's presentation is partially obscured by his inartfully drafted pleadings and weak grasp of the legal theories involved.

The defendant advised the court, through counsel, at the summary judgment hearing that the PTO was willing to again look at plaintiff's invention to see if there is a basis to justify its patentability. The defendant also stated that were the case remanded to the Board, the PTO would not require the plaintiff to pay a fee and the case would re-enter the application process for evaluation solely on the basis of the amended patent application. This course of action offers the plaintiff one more opportunity to have his invention considered in a fair and objective manner. The Court commends counsel for the defendant for her suggestions and assistance under the circumstances. The inter-

ests of justice are best served by remanding the case to the Board.

## CONCLUSION

Defendant's Motion for Summary Judgment is denied and the plaintiff's Cross Motion for Summary Judgment is also denied and this case is remanded to the Board for it to further consider the validity of plaintiff's claims.

## *ORDER*

This matter is before the court on defendant Commissioner of Patents and Trademarks' Motion for Summary Judgment and plaintiff, Mohammad Rouf's *pro se* Cross Motion for Summary Judgment. After a review of the record in this case and hearing the parties in open court, it is this 8th day of November 1993

ORDERED that defendant's Motion for Summary Judgment is denied. It is further

ORDERED that plaintiff's Cross Motion for Summary Judgment is denied. It is further

ORDERED that because the plaintiff is proceeding *pro se* and is not well versed in the procedures and processes of the Patent and Trademark Office, pursuant to representations made by counsel for defendant this matter is remanded to the Board of Patent Appeals and Interferences which shall again consider the patentability of the claims made by plaintiff in connection with his invention.

that this Court set aside the Board's opinion it is    treated as a cross motion for summary judgment.